THE PEOPLE ex rel. ANDREW V. STOUT, Receiver, etc., Appellant, v. ORLOW W. CHAPMAN, Superintendent of the Insurance Department of the State of New York, Respondent.

*Insurance Department — securities deposited in — disposition to be made of, in case of the insolvency of the company.*

The laws have provided for two classes of insurance: one by policies unregistered, but still protected by a deposit of securities to the amount of $100,000 in the insurance department; the other by registered policies and annuity bonds, secured by an additional deposit of similar securities, to an amount not less than $25,000. The former, when the company is found to be in such a condition as to be unsafe for the further transaction of its business, are to be distributed under a decree of the Supreme Court, made for that purpose; while the latter are to be sold by the superintendent of the insurance department, the proceeds of their sale paid over to the receiver, on his receipt, and applied by him to the satisfaction of the registered policies and annuity bonds, and the surplus on the debts owing by the company.

Appeal from an order denying a motion for a writ of mandamus, requiring the respondent to sell certain securities held by him and pay over the proceeds to the relator.

*E. L. Fancher*, for the appellant.

*Daniel Pratt*, attorney-general, and *Charles F. MacLean*, for the respondent.

Daniels, J. :

The relator was appointed receiver of the Asbury Life Insurance Company, under chapter 902 of the Laws of 1869. At the time of the appointment, the company had on deposit, in the office of the superintendent of the insurance department of this State, two certificates of the United States, amounting to the sum of $6,000, for the security of a registered policyholder, and $100,000 in like certificates, for the security and benefit of all its other policyholders. The latter were placed on deposit in such office on the 6th day of April, 1868, before the passage of the act under which the appointment of the relator as receiver was made. Upon an examination into the affairs of the company, it was found that its assets and securities were less than its obligations, including those entered into for the purpose of insurance, and an application was made to the respondent, by the relator, for a sale of all the securities on deposit in his office, and the payment of their proceeds over to him, on receiving his receipt for the same. This was declined by the superintendent, although assented to by the State treasurer, and the relator moved, upon notice, for a mandamus requiring such sale to be made, and the proceeds paid over to him. The application was denied, and the relator appealed; and it is now claimed that this decision was erroneously made. Whether it was or not, is the only point before the court upon the present appeal. The securities filed for the benefit of the company's unregistered policyholders, amounting to the sum of $100,000, were placed in the superintendent's hands, in compliance with statutory provisions then existing, which prevented life insurance companies organized under their authority from transacting the business of life insurance until that was done; and when they were filed, they were afterward to be held as security for these policyholders, in the company filing them. (Laws of 1853, chap. 463, § 6; Laws of 1860, chap. 328; Laws of 1862, chap. 300, pp. 503, 504.)

By the act of 1853, the securities were required to be filed in the office of the comptroller of the State, but, by the succeeding acts, that was changed to the office of the superintendent of the insurance department; and the act creating that department conferred upon its superintendent the powers, and required him to perform the duties, of the comptroller relating to insurance companies. (Vol.

4, Gen. Stat. N. Y., 252, § 3.) As that provision changed section 17, of the act of 1853 (Laws of 1853, 894, 895), the superintendent had authority, and it became his duty also, to cause an examination to be made of the affairs of the insurance company, and, when it appeared that its assets were insufficient to reinsure its outstanding risks, to communicate that fact to the attorney-general, whose duty it then became to apply to this court for an order that the company show cause why its business should not be closed. Upon the hearing of such an order, if it appeared that the assets and funds of the company were not sufficient to make such reinsurance, then it was provided that the court should decree a dissolution of the company, and a distribution of its effects, including the securities deposited in the hands of the superintendent. This provided a complete system for the disposition of all the securities deposited for the benefit of the general policyholders; and it appears to contemplate such disposition by the superintendent under the decree of the court to be made on the hearing of the attorney-general's application. For that purpose no receiver was rendered necessary. But the distribution was to be made according to a specific decree made for the purpose, and as the superintendent was the lawful depository of the securities, and he held them in trust for the policyholders, there would be very manifest propriety in requiring the consummation of that trust through his instrumentality. And that is what the legislature appears to have designed, for no provision was made for these securities passing out of his hands into those of any other person to make the distribution which was to be directed by the decree, or for the intervention of any other person in its execution. The decree, when made in conformity to this provision of the statute, would act directly upon the securities held by him, and in his hands, and direct their proper distribution. And as he was their legal custodian, not for his own benefit, but for that of the policyholders, his trust could not be completely executed until they were secured the benefit of them. He is the proper functionary through whom the distribution should ordinarily be made, a public officer selected for that purpose, and only needing the decree which the court has been authorized to make, to enable him to exercise the power. That would secure the harmonious consummation of the system devised by the statute, and it is

evident that the legislature designed it through the instrumentality of this officer.

Without changing those legislative provisions as to securities filed under them, it was further provided, in 1867, that any life insurance company, authorized to make insurances on lives within this State, might deposit in the insurance department other and additional securities, of the description of those mentioned in the preceding laws, in any amount not less than $25,000, which were to be for the special security and protection of registered policies and annuity bonds; and they were to be held and applied solely to that object. (Laws of 1867, chap. 708; Laws of 1869, chap. 902.) This authority was given to all companies authorized to make life insurance in this State, including those created by other States and by foreign countries, whose affairs could not be wholly closed by a receiver in this State, as well as those organized under its own laws. The provisions made by these laws chiefly relate to the security of holders of registered policies, and annuitants, as all the sections preceding section 7 of the act of 1869 very plainly show. And they require the securities deposited under them to be held and appropriated for the use of those persons, and no others, as long as any of their demands may remain unsatisfied.

But in the examination which the law has provided shall be made into the affairs of the companies, all assets and securities are required to be included, for the obvious reason that in no other way could the real condition be ascertained or discovered. On such examination into the affairs of any company which has deposited securities for the benefit of registered policyholders and annuitants, if they appear to be in such a condition as to render the issuing of additional policies and annuity bonds by it injurious to the public interests, the superintendent is required to report that fact to the attorney-general, whose duty it then becomes to apply to this court for an order that the company show cause why its business should not be closed. And if, on the hearing to be had, it shall appear that its assets and funds are not sufficient to justify the further continuance of its business, then the court shall restrain and enjoin it from doing so, and appoint a receiver of all its assets and credits, who shall take possession of all such assets and credits, " except the securities deposited in the insurance department under

the provisions of this act, and the act hereby amended, which said securities shall remain in said department, to be disposed of as hereinafter provided." (Laws of 1869, 2276, § 7.)  The act amended was the act of 1867, which first made provision for filing securities for the benefit of the holders of registered policies and annuity bonds; and the last clause · of the section just quoted, restricts the securities to be disposed of in the manner afterward provided for, to those deposited only for such purpose.  The next section then provides how these securities shall be disposed of; and that is, upon the receiver discovering, by the investigation provided for, that the securities deposited in the insurance department, and the assets and credits, including future premiums on outstanding policies, are insufficient to pay all the policies, annuities, and other obligations of the company, as they mature, and the costs and expenses of his proceedings, he shall notify the superintendent thereof, who, with the consent and advice of the treasurer of the State, and in such manner as the receiver, superintendent and treasurer, or a majority of them, shall determine, shall sell and convert the securities into money, and pay over the proceeds to the receiver upon his receipt for the same.  The securities so to be sold are not otherwise expressly defined by the statute than by the use of the terms contained in this section, which refers to them as " said securities" simply.  (Laws of 1869, 2278, § 8.)

Their precise import is rendered somewhat obscure by reason of the circumstance that both descriptions of securities are previously referred to in the same section; and, in themselves, these terms are broad enough to include them all, but it does not seem to have been the intention of the law that they should be as broadly construed as that.  The preceding act, which rendered the securities deposited for the protection of the unregistered policies distributable under the decree of this court, was not expressly repealed, and no good reason exists for holding that to have been done by mere implication.

The system created by the act of 1853, and that provided by the act of 1869, may both be consistently maintained together, when limited to the subject-matter of the respective laws creating them; and when that proves to be the case, the preceding law is not necessarily to be considered as repealed by the one succeeding it.  (*People*

v. *Palmer*, 52 N. Y., 84; *Spratt* v. *Huntington*, 9 S. C. [2 Hun], 341, 344.)

Then, by the first clause of section 7, of the act of 1869, it was only companies which deposited securities under it, or under the act of 1867, amended by it, that could be proceeded against at all in the way it has prescribed; and when that has been done, by the succeeding provisions of the same section, the receiver is only to be appointed of its assets and credits, from which the securities on deposit with the superintendent are expressly excluded. By the last clause of this section, they are to be disposed of in the manner afterward provided for, but even that disposition was limited to those deposited under the provisions of the acts of 1867 and 1869. (Laws of 1869, 2276, § 7.) This portion of the section very clearly indicates it to have been the purpose of the general terms used in section 8, only to provide for the disposition of the securities deposited for the benefit of the registered policies and annuity bonds. And that was all which, at the time, required legislation, because the manner in which the securities deposited for the unregistered policies were to be distributed, had then been clearly regulated and prescribed by the act of 1853. Nothing further was needed on that subject.

The application to be made of the proceeds of bonds, sold by the superintendent pursuant to section 8, of the act of 1869, exhibits the propriety of that construction, for none of such proceeds can be used to satisfy or extinguish unregistered policies. They are wholly confined to other well-defined *objects*, and they are " the payment of the registered policyholders of said company, in proportion to the net value of their policies respectively, and to the registered annuities of said company in proportion to the then present value of their respective annuities, as estimated by the legal standard for valuing life insurance and annuity obligations within this State. The surplus derived from such sale or sales, if any there be after the payments above mentioned, with all the other assets of the said company, shall be then applied to the payment of all the just debts of said company incurred in the conducting and carrying on its business." (Laws of 1869, 2278, § 8.) This, it will be seen, makes no provision whatever for policies not registered, and if the securities to be sold under the authority of that section, shall be

held to include those deposited under the act of 1853 and the laws amending it, for the sole benefit of unregistered policies, then the proceeds, according to section 8, of the act of 1869, must be diverted from such policies, to be first applied to the satisfaction of registered policies and annuity bonds, and afterward to the payment of the debts of the company. This could not have been the intention of the legislature in passing the law, for the registered policies and annuity bonds were rendered perfectly secure without such a diversion of the securities provided for the unregistered policies, and it would involve such an act of injustice to the holders of the latter, as cannot be held to have been contemplated.

The laws have provided for two classes of insurance: one by unregistered policies, but still protected by a deposit of securities to the amount of $100,000 in the insurance department; and the other by registered policies and annuity bonds, secured by an additional deposit of similar securities to an amount not less than $25,000. The former, when the company is found to be in such a condition as to be unsafe for the further transaction of its business, are to be distributed under a decree of this court made for that purpose; while the latter are to be sold by the superintendent, the proceeds of their sale paid over to the receiver on his receipt, and applied by him to the satisfaction of the registered policies and annuity bonds, and the surplus on the debts owing by the company. Two distinct systems have been created, and justice to the unregistered policyholders requires that they should be separately preserved and maintained. It is not designed to be held that the court cannot select a receiver or a referee to make the distribution of the proceeds of their securities among the unregistered policyholders, and for the adjustment of the other obligations of the company under its decree, but that no such appointment has been rendered necessary by the statute to accomplish those objects. Whether that may be done or not in a case appearing to require it, is not involved on this appeal, for no such appointment of the relator has been made. He was appointed under the act of 1869, and has no more authority than by its provisions could be conferred upon him, which does not include the least control over the securities, or their proceeds, deposited for the protection of the holders of unregistered policies.

No other provisions made by the act of 1869 require particular

consideration in the disposition of this case, for they have no application to the point presented for its decision. Sections 9 and 11 were designed to govern a state of things not now before this court. The final clause of the latter provides that companies availing themselves of the right to issue registered policies and annuity bonds, may continue to issue unregistered policies as authorized by the charter, but subject to the provisions of section 8 in relation to the distribution of their assets. This provision is prospective in its nature, and it does not appear that the company of which the relator was appointed receiver, ever availed itself of that privilege. But if it did, no difference would result from it in this case, for it is simply the assets of the company that are thus placed within the control of section 8, and that term has not been so used in the act as to include the securities filed in the insurance department. They are rendered subject to a different disposition by the terms of section 8, when held for the benefit of registered policies and annuity bonds, and to another proceeding altogether, which has not yet been instituted for their distribution, when held for the security of unregistered policies.

The order appealed from was correctly made, and it should be affirmed with ten dollars costs, besides disbursements.

DAVIS, P. J., and BRADY, J., concurred.

Order affirmed, with ten dollars costs, besides disbursements.